case number 22-11470 Edward DiMaria v. United States. Mr. Clu. Good morning. May it please the court. This case deals with a prosecution of an accountant and a chief financial officer and in the accounting prosecutions, which seem to be more common, and there are a lot of issues that seem at face value to be numerical, but they really have a great complexity to them. And the analogy would be to say to an interpreter in the courtroom, they're not just doing translation, there's a lot of interpretation. And this case involved two primarily one concept, which is how long does the company keep reserved expenses on the books? At what point is the certainty that that expense is not going to have to be paid out to or dispersed from the company? At what point does that become so certain in the accountant's mind that the accountant or financial officer believes that it should be just written off the books or which would inflate then the worth of the company? And the government has perceived in some instances that companies have a practice of using this sort of expense ledger entry and having it as what's called a cookie jar. And so they have these cookie jar prosecutions and they say companies will use that cookie jar to level out their earnings so that they will look like they're on a steady climb and they're not on a roller coaster. Can I ask you just to get to the heart of the matter from my perspective is this is an ineffective assistance of counsel at plea stage. And you've made arguments that you think that, and this is the way I perceive the arguments, is that you've identified some defenses that could have been raised and some arguments that could have been made had the case gone to trial. But I really don't see anything, and I guess I'm asking you to point it to me, where you say, look, here's the advice that we got that was wrong and here's why we would not have pled guilty had the correct advice been given. It's just kind of there are some defenses that could have been made, but that's not enough, right? Well, certainly an abstract concept would not be enough. What we've tried to do from the initial time we filed the 2255, it's been six years now, is to point out that what the attorneys did, the attorneys had a superficial awareness of some very significant entities who had carefully evaluated it, evaluated all the entries at issue, the whole cookie jar concept and everything else, and said, there's not even a need for restatement here. It's so immaterial. I mean, even immaterial matters. There was a restatement. Pardon me? There was a restatement of earnings, but it occurs after the SEC has dropped the case. The SEC looks at it, says, no, we agree. It's just nothing there. Then a prosecutor comes in and says, well, I'm going to contradict everybody, and I'm going to say, we're going to go after you, and we're going to be prosecuting. At that point, particularly including with the new ownership coming in, the company is more or less forced to have a restatement. There's always a debate about what, if there were a loss, what causes it? I thought, but the magistrate judge's report and recommendation and the district judge order adopting it indicate that both Mr. DiMaria and his trial counsel were aware of the Grant Thornton report and the law firm's internal investigation report, which were prepared during the SEC investigation and well before the indictment and certainly well before the plea. They reason, rightly or wrongly, that everybody had access to this report. Everybody knew those reports. They knew about those reports. As Judge Brasher put it, there might have been some defenses at a trial, but they chose to go forward with a plea. I guess the question is, how is that ineffective assistance of counsel? What we believe we have stated factually in the petition is that, as remarkable as it may seem, the lawyers simply did not explain to the defendant that these opinions, if these opinions were to hold up, if these witnesses were to be interviewed and they were to hold up, that there would be no materiality and it would be a case killer for the government. Let me ask you, with respect to the Grant Thornton report, didn't your client admit making misstatements to those auditors? Doesn't that diminish the value of that? It doesn't only because the misstatements themselves were immaterial and furthermore, the material of those misstatements can be seen by looking at what Grant Thornton did after they learned those misstatements. In other words, after the SEC came in, after all that stuff is found out, Grant Thornton, as well as Wachtell Lipton, both say, no, it still doesn't matter. There's just nothing material here. I agree that it's always a facial problem in saying, look, you're making misstatements. From the defense standpoint, whether these attorneys understood it or not, they didn't pursue and proceed to really explain to the defendant that you're just not liable simply because you made misstatements, because you got scared and said something wrong to Wachtell. You're not liable just because you didn't move some expense items fast enough or write them off fast enough. I think the case might be different or at least might be seen in a different vantage point. At least this is my perspective. If you had cases either from this jurisdiction or another jurisdiction that said what Mr. DiMaria is alleged to have done in this case is not criminal, because those sorts of misstatements, if you will, in accounting forms and ledgers and books of the company are not material, for example. If you had decisions from the Sixth, Seventh, and Eighth Circuit saying that's not criminal and the lawyer didn't advise Mr. DiMaria of that, that's one thing, but there's no precedent on whether or not this sort of, as you put it, cookie jar or as the district court referred to it, a cushion scheme is legally problematic for an individual like Mr. DiMaria. Your Honor, we tried to find any cookie jar prosecution or any equivalent to a cookie jar case that had elements of clear materiality, not just objective materiality as well as subjective materiality. Again, essentially the two prongs of our argument today, the first prong is the objective materiality that's really the focus, whereas the second prong of the argument is the subjective materiality that goes to inducing the defendant to essentially agree to almost a guaranteed statutory maximum consecutive sentence. You say that, but I thought this was a very unusual plea agreement because it specifically agreed to the amount of loss and other sentencing factors and then got the government to drop some counts so that the maximum would be just ten years, right? That's exactly the question that I wanted to address because the way that from the defense attorney standpoint, and I'm alleging what a defense attorney should have done, and what happened here is you're advising the defendant, look, we're going to agree to these guidelines because maybe they could go up to the next level, 50 million on loss, and you're facing 25 years under the guidelines with this loss. It is the mistake about the loss that drives the impetus, creates the impetus for the defendant to take the plea. If the defendant sees, look, they've got the loss all wrong, they didn't read Stein, they don't understand proximate cause, they didn't read some of, I mean, I don't know. I'm just curious about this. How sophisticated does the advice have to be not to be ineffective assistance? I mean, if the advice is, look, the government's arguing that there's $50 million of loss here. If the government proves $50 million of loss, then this is what your sentencing outcome will be. I don't know whether the government can prove that or not. I think they probably can't, but that's what you're looking at. Is that effective? Your Honor, that might well be effective. That's again, we're not trying to get relief. I'm not trying to vacate a conviction today. All I'm saying is this case, with the magnitude and complexity of the issues and the degree of the importance of the types of issues we're talking about, it deserved a hearing. I think the court has said in several cases that really a hearing should almost be the regular practice when there is any factual component to it that might affect it. One of the government's arguments were that, look, these are expensive lawyers who are representing him. They must have done everything right. But they produced no affidavit, not even a letter, not even an unsworn allegation from the attorneys to rebut anything in here, which I think was unusual in a case of this complexity. But some of it is, in part, refuted by the record of the proceeding itself, what the government told the district court about how loss was calculated, for example. I understand that the government said those things. Those things were directly, of course, inconsistent with then binding precedent in the Eleventh Circuit at the time. The one thing I didn't see in the 2255 motion, the addendum to it, which lays out the factual and legal basis for the ineffectiveness claims, is any assertion on what the loss properly calculated would have been, assuming guilt. We did. I'm not positive whether it's in the addendum or whether it's in another filing. My recollection, we identified it as zero to 40. Zero to 40 what? 40,000. Okay. There really was no loss here. And that's why, I mean, when you have a case where gigantic companies like Grant Thornton and Wachtell, gigantic institutional investors have gone through the whole SEC, they've seen everything, and everything's fine. There's no loss caused by . . . I see that statement in the, I now see it on page 21 of the addendum to the 2255 petition. But there's no explanation of how you get to zero to 40,000. How do you arrive at that? We gauged it down to zero based on an extrapolation from the Grant Thornton numbers. Everything, we identified a whole list of factors that we thought, and I think we've got them at page 15 to 16 of the reply brief. We also have them in another part of the addendum. All of these factors that are cited, for example, in Stein, that would be factors that would indicate that this was not the cause of the loss. The immaterial misstatement, which we think was objectively immaterial, even if it was somehow not objectively material, still was not subjectively material, again, by the fact that you've got the SEC looking at it. Right. But that's assuming there's no crime, but you have two different bases for relief. And the second one assumes the first one loses. That's correct. Right. So you have to assume guilt. Right. And now the question is, okay, there was a material misstatement.  And Mr. DiMaria admitted guilt of that misstatement. So now the question is, how do you calculate loss? I think there's two questions. The government, in some cases, in some of these security cases, will actually charge the failure to report that the person's engaged in criminal activity and saying, because of that, when we had to report that you were engaged in criminal activity, the stock went down. But this is not one of those cases. This is a case where they're saying that these adjustments in the expense accounting caused investor reliance and that these investors lost money in some way or fashion because of that investor reliance. And there is absolutely zero evidence of that. I handled the resentencing in Stein. No, but it's hard, and we'll stop with this and give you all your time for rebuttal, but this is not a procedural scenario where the government is put to its burden of proof because there was a negotiated plea agreement. And so the level of proof that's required of the government in a contested proceeding, trial, or sentencing is not always present in this sort of a plea arrangement. But I think we understand your points, Mr. Kluh, and we'll give you your full five minutes for rebuttal. Thank you, Your Honor. Mr. Lange. Thank you. Good morning, Your Honors, and may it please the Court. Andrew Lange for the United States. The District Court correctly denied DeMaria's 2255 motion without an evidentiary hearing because with respect to both of the claims now before this Court, DeMaria has failed to show either deficient performance or prejudice, and therefore this Court should affirm. Let me start with the deficient performance prong of the failure to investigate claim, because I think, as this Court has alluded to, there are several insurmountable hurdles facing DeMaria. The first is that I don't think DeMaria has been specific in identifying what further investigation his counsel should have performed. So the allegations in the 2255 motion are conclusory for that reason. We agree that I think DeMaria has never disputed that the Grant Thornton report, the Wachtell-Lipton report, the four expert reports that DeMaria has mentioned that I don't believe have ever been provided to a court, certainly not to the government. There's never been a dispute that DeMaria's counsel possessed all of those documents during the plea negotiation. So to the extent that this claim is premised on the idea that DeMaria's counsel should have accessed those documents or possessed those documents, I think it's facially unpersuasive for that reason. And then . . . If you take what the magistrate judge in the district court found on that score as a given and start from there, his claim, as Mr. Clue explained it today, is that his lawyers didn't do enough to explain the significance of those reports to him and the impact that they might have on the government's theory of materiality and therefore guilt. Sure. So a couple of problems, I think, with that argument, if we see the argument as his counsel should have appreciated or derived facts from those reports. So the first problem is there isn't a clear explanation in his 2255 motion of what that investigation would have entailed or how further digestion of the contents of the reports would have produced the list of facts that DeMaria provides or would have led to the conclusion that the misstatements weren't material. So I think there's a missing link in the argument there. Another problem is that DeMaria hasn't disputed that he was present at the inception of the Grant Thornton and Wachtell Lipton reports. He was the CFO of Bankrate when those investigations took place. He knew what was going on. He knew the information that was being provided and, of course, withheld from Grant Thornton and Wachtell Lipton. So I think he understood the significance of those reports. He was the CFO of a publicly traded company. He was a CPA. And as this court has held, counsel doesn't need to go searching for information that a client already possesses. But the final problem with that argument is that I think it overstates the exculpatory quality of those reports. The Grant Thornton report, for example, was prepared while DeMaria was lying to Grant Thornton. A header on page three of the factual basis is concealing false and misleading entries from Grant Thornton. So I think it's unsurprising that Grant Thornton and Wachtell Lipton concluded, at least at that stage in 2011-2012, that there was no malfeasance going on with respect to Bankrate's accounting because they were being lied to by Bankrate's CFO and, crucially, DeMaria admitted that that's what he was doing when he pleaded guilty. So that, I think, takes us into the prejudice side of the failure to investigate claim, which DeMaria hasn't spent as much time on. The Rule 11 colloquy was very thorough. The magistrate judge took DeMaria through all of the elements of both of the offenses to which he was pleading guilty using language from the jury instructions. The district court defined materiality in plain language. With respect to the loss amount, the magistrate judge went out of her way to ask the government to define its calculation of loss for DeMaria to agree to. So I think even if there had been misadvice with respect to the contents of the reports or investigation of the facts, that misunderstanding of whether the false statements were material would have been cured by the Rule 11 colloquy. Let me ask you, how do you respond to opposing counsel's comment that the loss was somewhere between zero to forty thousand dollars as opposed to the twenty five million dollars? Sure, Judge Covington. My first response is I don't know what the basis is for zero to forty thousand dollars. I don't think there is a basis for it. I didn't see an explanation for that figure in the 2255 motion or its addendum. Our position, of course, is that the loss is in excess of twenty five million dollars and there's a solid basis for that conclusion in the record. DeMaria agreed in the plea agreement during the plea colloquy that that's what the loss was. The magistrate judge, as I said, explained the loss or had the government rather explain the loss calculation in plain language. The loss calculation was also reflected at the government sentencing memorandum as well as in the PSR. So I think there's an ample basis to conclude, as the district court below did, that DeMaria understood that this was the loss amount and he was responsible for it. I take your point that in a plea scenario, the government's explanation probably need not be as sufficient as it needs to be in a contested proceeding. You've got to satisfy every element of your burden, whatever that burden is and under whatever standard. Of course. But here I think Mr. DeMaria is getting at what he's trying to get at is that although the government explained at the plea colloquy hearing how the loss amount was calculated, I think what he's trying to get at is to say that what's missing from that, and I don't know if you're required to put it on in a plea hearing, is the reliance element. So you've got people who bought stock at a certain time, you've got people who sold at a certain time, you use those things as factors in figuring out loss amount and all that. And you say you've talked to some whatever. But I understand what he's saying in a more global way that it's hard to determine reliance on a class-wide basis in this sort of a case. You may have had individuals who cared not a whit about this sort of thing and bought and sold at certain times. I think that's fair. I think that's first of all a fair characterization at least of his argument on appeal. I agree with that the government doesn't have to put on as much evidence of something like loss in this context because DeMaria's admission that the government could have proved loss and indeed that the government could have proved loss beyond a reasonable doubt was enough for the district court to rely on at sentencing. And I agree that the government didn't put on the kind of evidence of loss that it often puts on in these kinds of fraud on the market or investor reliance cases, event studies, expert reports, things of that nature. And the government would have done that had this been a trial. But part of the benefit of pleading guilty is that the government is relieved of that obligation. It's easier on the parties. It's easier on the district court. So DeMaria agreed that the government would be able to prove loss beyond 25 million dollars and the district court was entitled to rely on it. I would also point out with respect to this reliance argument that I think the district court was also correct in holding that DeMaria failed to make this argument before the magistrate judge. DeMaria didn't cite Stein in his 2255 motion. He didn't talk about reliance. He mentioned, as your honors have pointed out, the zero to forty thousand dollar loss range but he effectively conclusorially asserted my attorney misunderstood the law on loss and therefore loss should be far lower. But there's not really a factual or a legal explanation for that figure. So I think the district court was correct in as one alternative basis for resolving this argument holding that DeMaria was raising it untimely in his objections to the report and recommendation and of course district courts don't abuse their discretion in declining to consider arguments that weren't timely presented to magistrate judge. Can I ask you to address a broader issue that I have with this case? I just want to know what you think about it. So the way I case is the defendant is saying I pled guilty and I've now identified some defenses that could have been raised that it could have been litigated and you know maybe had we litigated these I would have won. It's just kind of more broad. Is that like an ineffective assistive counsel claim that has been recognized by somebody somewhere? Like I just don't understand that. It's a fair question Judge Brasher. I think the answer is conceivably yes. It is an ineffective assistance counsel type of claim where you could say I didn't understand what I was pleading guilty to. I didn't understand that I could have raised a defense. I suppose I could imagine a scenario in which that kind of claim would be successful but I think this is far from that kind of circumstance just because of the lack of factual specificity, the lack of an analytical connection between the alleged misadvice and the decision to plead or go to trial. So I mean so the hypothetical that Judge Jordan posed for example if there had been some case somewhere that had addressed a cookie jar scheme and had said you know this is not a crime. Government can't prosecute. It seems like in that kind of case the defendant could say look my lawyer was ineffective because had he done some work he would have found out that you know this wasn't it's not just that there's a conceivable possibility of a defense but like we would have had a really good shot at winning. Apart from that I mean it seems like there are always defenses that could be brought to something. What would a lawyer have to do if the standard is it's ineffective assistance of counsel unless the lawyer goes through every conceivable defense such that another lawyer you know years after the fact can't find something else that can be presented? I guess I'm just trying to figure out like what would be the cutoff for ineffective assistance of counsel if just you just kind of re-litigate guilty pleas? It's a good question and I think this court has been fairly strict with litigants in determining how much of a showing a 2255 movement has to make in order to establish that kind of failure to investigate ineffective assistance. So Campbell for example which we said in our brief I think is maybe a good example of that kind of analysis where this court dealt with a claim that an attorney should have done more to investigate a fourth amendment standing defense and this court held well among other things the suppression hearing transcript showed that the lawyer performed reasonably. There's always in a theoretical universe more that an attorney could do to investigate a defense like a fourth amendment standing for example but in Campbell this court held that the attorney was thorough was well prepared had already done some investigation and could have reasonably believed that he had enough information and his time would be better spent on other issues. So I think that the deficient performance analysis sometimes I grant you is difficult because it's hard to draw a clear line between deficient performance and reasonable performance but not maximal performance but in any event I emphasize that I don't think that this is that case I think this case is more straightforward because there is relatively little in terms of allegations of what the attorney should have done differently and the record strongly supports that I think the attorney's performance was reasonable and any deficient performance didn't cause prejudice. Speaking of prejudice I also want to make sure that I just briefly touch on prejudice with respect to the loss amount as the district court pointed out both at sentencing and in ruling on the 2255 the plea agreement conferred on DeMaria a very substantial benefit of a massive reduction in the guidelines range from guidelines with multiple 20-year maximum counts to a 10-year statutory maximum which was about half of the guidelines range with acceptance of responsibility credit. So on the prejudice front DeMaria has to show that it not only he would have gone to trial had he received different advice about loss but that the decision to go to trial would have been rational and in cases like Long and DiVaroli which we cite in our brief this court has made it clear that it's difficult to show that the decision to go to trial would have been rational when the relative benefits and burdens in terms of the penalty a defendant is facing are so very different as they were in this case. Unless the court has additional questions about these issues we ask the court to affirm the judgment of the district court. All right thank you very much. Thank you. Mr. Clue at some point in your in your discussion would you explain what facts you would want to prove at an evidentiary hearing because I'm having a conceptual difficulty figuring out. It seems to me your argument is that as a legal matter he's not guilty you can't prosecute these cookie jar schemes. What is the fact issue for an evidentiary hearing? Well the most important fact is what did the attorney do beyond knowing the identity of these witnesses Grant Thornton, Wachtell Lipton? How did he investigate? Did he go to look to see yes these people hold up, yes this argument about misstatement doesn't work because Grant Thornton knew that after at the time that he issued its military materiality element. What exactly what did Wachtell do in addition to what Grant did? Did Wachtell incorporate every little accounting error that the SEC found? Yes. And how did they do that? Was Wachtell completely independent? Are they going to be a good witness? The same types of things and most of the reversals comes in in cases like of an alibi witness and and that's and I think the court is correct unless it's going to be something that's really case dispositive it's just something that another another pebble on the scales it may be different. We're talking about case dispositive factors on every single count materiality objective materiality and so that's the most important thing he would have done to identify and investigate and then as part of the analysis convey that to the defendant let him know that you know that if all of these people hold up and he would know because he was there and he saw how good they were then you've got a complete defense to this case and so complete complete defense if the government doesn't have witnesses who are also just as credible. Well I'm saying they'd have to have experts and I never saw one from them saying anything about materiality in other words their claim was just in the indictment they put the word material in you don't need to support an indictment with an expert report Mr. Clue and that's my point about the 2255 your honor and and especially in a police scenario I mean yes I know I know your honor I'm just saying that all of these issues are the burden they they say we didn't cite enough cases in our 2255 the form of the 2255 that says doesn't don't cite any cases we put the analysis completely in there the the this type of case where we have no idea what the defendant said and has sworn to which is basically saying I don't care about anything it look at you doesn't really say what the lawyer told him well he said what he didn't tell him he said he didn't tell him he didn't say what the lawyer did tell him that's right he said and because we what's fundamental to us again it's we we set it forth in the in the 2255 as a non no objective materiality and no subjective materiality and that's still where we stand the government let's go backwards the government said something about our objections that we said something that they now say we shouldn't have said they didn't even file a response to our objections to the 2250 to the report on the 2255 when the the judge was talking about Stein I think the judge if you look in my reading of the report he's talking more about a sentencing claim that this court has not granted a COA on and so I I think that the fact that we put every bit of the argument pertaining to Stein we set forth on I think it's pages 15 to 16 of our reply brief it's in other places from the the initial filing all of these ways in which we that Stein what Stein requires simply doesn't exist here they didn't make any attempt to prove actual reliance so that what they relied on is a circumstantial reliance case and and Stein has completely debunked this theory that you can just throw away an analysis of of well because the stock fluctuates in a contested proceeding you're probably right but this is not a contested proceeding and I understand the one thing I can tell the court is when I advise the last person I talked into pleading and I shouldn't guess I shouldn't use that term that is is was based on your guidelines are 25 to 30 years you've got to plead and its guidelines are critical they've been critical since since they started designing them in the in the 70s and 80s they are absolutely the what drives the pleas because the district judges apply the guidelines and and when you tell a client no we have to agree that these guidelines are 20 based on a 22 point level enhancement for a non-existent loss a non-existent actual loss they didn't claim intended loss there was no no hint of intended loss then that and and when everything that they've said so far in not a single filing have they explained any rational calculation of a 25 million dollar loss everything that they've said they try to explain in one or two filings earlier has is completely contrary to Stein and so but getting back to the question I agree that if a lawyer says you know tells the defendant look you have a great materiality defense here you have this element you have this element of this element we could wipe out their whole case as long as these witnesses hold up and they haven't identified anybody's going to contradict them but I have legitimately calculated your guidelines in their 30 years I don't think the defendant can come back and complain if he if he later on that you know that he made a mistake but this isn't that case thank you very much all right thank you Mr. Clue thank you Mr. Lange